UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAGRANGE VENTURES, LLC, | ) | |
| | ) | No. 15 C 7922 |
| APPELLANT, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| APPELLEE. | ) | |

**MEMORANDUM OPINION AND ORDER**

This appeal from the United States Bankruptcy Court raises a single question: How far back can Wells Fargo claim default interest on the Apple Pan promissory note? The answer depends solely on the interpretation of a few key provisions of the note, and thus presents a legal question subject to *de novo* review. *See In re Airadign Commc'n, Inc.*, 616 F.3d 642, 654 (7th Cir. 2013) (the interpretation of a written contract is a question of law subject to *de novo* review). This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

**Facts**

In 2003, Apple Pan, LLC executed and delivered to BMO Harris Bank, N.A. a promissory note secured by a mortgage on property now owned by LaGrange Ventures, LLC, the appellant. Upon default, the note permits the lender, "at its option," to increase the interest rate on the note. The note further provides that the "Lender shall not be deemed to have waived any rights under this Note unless such waiver is given in writing and signed by the Lender." It also states that the "Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them." Finally,

the note provides that its terms "shall inure the benefit of the Lender and its successors and assigns."

The note went into default on June 23, 2010. BMO Harris accepted payments on the note through December 2010. Those payments did not call for or include default interest. After the payments stopped, BMO Harris filed a foreclosure action against LaGrange in state court. The foreclosure petition did not seek default interest, nor did the prove-up affidavit filed by BMO Harris in support of a motion for entry of judgment (the "Harris Affidavit"). Shortly thereafter, on September 23, 2013, BMO Harris assigned the note to Wells Fargo, the appellee. Wells Fargo moved for summary judgement on January 15, 2014, attaching to its motion an affidavit calculating, among other amounts, the default interest owed on the note assessed from the date of default. In entering judgment in the foreclosure action, the state court awarded the full amount claimed by Wells Fargo, including default interest. While a motion for reconsideration of that award was pending, LaGrange filed for Chapter 11 bankruptcy.

On February 4, 2015, Wells Fargo filed a Proof of Claim in the bankruptcy proceedings consistent with the order of the state court for the amount owed on the promissory note, including the full amount of default interest. LaGrange objected to Wells Fargo's assessment of default interest. It argued that at the earliest, default interest should be calculated from the date the note was assigned to Wells Fargo, but that more properly, default interest should be assessed only as far back as the date Wells Fargo moved for summary judgment in the foreclosure action. The Bankruptcy Court orally ruled three separate times in Wells Fargo's favor, finding no waiver by

BMO Harris or Well Fargo of the penalty rights, which include default interest, set forth in the promissory note.

On appeal, LaGrange challenges the Bankruptcy Court's determination that default interest should be calculated from the date of default. The heart of LaGrange's argument is that because "BMO Harris had not elected to assess a penalty rate of interest under the subject promissory note prior to the assignment of the loan[,] . . . Wells Fargo [cannot] assess a penalty rate of interest retrospectively to the date of default." R. 9 at 4-5. The Court considers the various aspects of LaGrange's argument below.

**Analysis**

LaGrange asserts that "[t]h[is] dispute is not about 'waiver.' It's about 'election,' and specifically the right of the lender to *elect* Default Interest on a date certain when the lender actually owns the Note, and not before." R. 9 at 11 (emphasis in original). The Court sees the case differently, however, and considers the central question to be whether, absent assignment, BMO Harris would be entitled to collect default interest back to the date of default. The answer, as detailed below, is that the note unambiguously allows it, and thus the entitlement inures also to the benefit of Wells Fargo. None of the authority LaGrange cites requires a contrary interpretation of the plain language of the agreement.

1.  <u>The Harris Affidavit</u>

In support of its argument, LaGrange first directs the court to BMO Harris's prove-up affidavit ("Harris Affidavit") in the foreclosure action. As already noted, the Harris Affidavit does not seek default interest. LaGrange argues that the Harris

Affidavit thus "stands as a judicial admission" under Illinois Supreme Court Rule 113 that BMO Harris "affirmative[ly] elect[ed] *not* to charge Default Interest under the Note." R. 9 at 14 (emphasis in original).

LaGrange makes no effort to square this argument with the plain language of the contract, which permits BMO Harris to "delay or forgo enforcing any of its rights or remedies under this Note without losing them." Thus, even if LaGrange is correct that the Harris Affidavit constitutes an affirmative election not to seek default interest at that time, more is required under the contract to extinguish the lender's contractual default rights. As set forth above, the lender's rights under the promissory note are preserved absent "[a] waiver . . . given in writing and signed by the Lender." This Court agrees with the Bankruptcy Court's finding that the Harris Affidavit cannot fairly be read as this type of waiver. R. 11-2 at 204, 217. BMO Harris's affirmative election not to pursue default interest in its foreclosure pleadings is therefore not dispositive of its future rights under the agreement or the rights of its successors and assigns.

2. Case Law

LaGrange next directs the Court to two cases, neither of which bind the Court, and both of which are distinguishable on their facts. The first, *In re Sweet*, 369 B.R. 644 (Bankr. D. Colo. 2007), considers whether a noteholder can collect default interest back to the date of default if its predecessor-in-interest never exercised its contractual discretion to do so. The *Sweet* Court answered this question in the negative, holding that absent a manifestation of intent by the original holder to charge default interest, his successor could only assess default interest from the date of assignment. *Id.* at 652. But the *Sweet* decision makes no mention of any waiver or preservation of rights

clauses like the ones in the Pan Apple promissory note. That is likely because the note in that case had no such clauses. After all, the logic of *Sweet* does not hold water where, as here, the note not only permits the lender "to delay or forgo enforcing any of its rights or remedies … without losing them," but furthermore requires that any waiver of rights by the lender be "in writing and signed." Requiring a manifestation of intent to enforce as the court did in *Sweet* simply cannot be reconciled with the unambiguous terms of the Pan Apple promissory note. The logic in *Sweet* does not apply.

The second case, *In re Crystal Properties, Ltd., LP*, 269 F.3d 743 (9th Cir. 2001), is likewise unhelpful. That case also considered whether an noteholder could collect default interest prior to the date of assignment if his predecessors-in-interest had never affirmatively elected to do so. *Id.* at 747. Critical to the Ninth Circuit's analysis in that case was that the default interest clause in issue was tied to the holder's option to accelerate:

> Should default be made in any in any payment provided for in this note, . . . at the option of the holder hereof, and without notice or demand, the entire balance of principal and accrued interest then remaining unpaid shall become immediately due and payable, and *thereafter* bear interest, until paid in full, at the increased rate of five percent per annum over and above the rate contracted for herein.

*Id.* at 748 (emphasis added). Reading "the contract language . . . to require the holder to exercise its option to accelerate before the default interest rate is triggered," the Ninth Circuit reasoned that because none of the noteholder's predecessors had ever exercised their option to accelerate (an option which requires affirmative notice to the borrower under California law), the noteholder could not assess interest back to the date of default. *Id.* ("The use of the word 'thereafter' can only mean that the default interest

rate does not become effective unless the holder of the note exercises its option to accelerate).

The acceleration requirement in the *Crystal Properties* note distinguishes it from the note at issue here. Unlike the *Crystal Properties* note, the default interest provision in the Pan Apple note stands alone—default is all that is required to trigger the holder's rights to the remedies set forth therein. The borrower defaulted on June 23, 2010, automatically triggering BMO Harris's right to collect default interest. By the plain terms of the note, the right was never waived, and it inures to the benefit of Wells Fargo.

3. Retroactivity

LaGrange's final argument regarding retroactivity is without merit. LaGrange argues that "[a]s a matter of public policy, courts disfavor the application of 'retroactivity,' and are reluctant to allow the retroactive application of a right if it prejudices the party against whom retroactivity is applied." R. 9 at 23. LaGrange goes on to cite various cases disallowing retroactive application of changes in federal law when such application results in "manifest injustice" to private parties. *Id.* at 23-25. LaGrange attempts to argue by "analogy" that Wells Fargo's assessment of interest back to the date of default would yield a "manifestly unjust" result "because the outstanding note balance would unfairly increase." *Id.* at 26. The analogy is imprecise, incongruent, and not well taken.

The issue here is not retroactivity, after all, but delay. The right to collect default interest has at all times been allowed under the contract. Based on BMO Harris's forbearance of that right, LaGrange expected a lesser amount to be due and owing on

6

the note than Wells Fargo now claims. The late invocation of the always-present default right by Wells Fargo was apparently inconsistent with LaGrange's expectations. It should not have been, since the note expressly permits the holder to "delay or forgo enforcing any of its rights or remedies" without consequence. LaGrange's miscalculated expectations are not analogous to the due process concerns contemplated by retroactivity jurisprudence. LaGrange's argument misses the mark.

**Conclusion**

The order of the bankruptcy court is therefore affirmed.


ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge


Dated: July 22, 2016